**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| LAUREN BOYER, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE STEEL COOP, LLC,<br><br>Defendant. | **Case No. 2:24-cv-84**<br>FLSA Collective Action<br><br><br>Judge: Hon. Waverly D. Crenshaw, Jr. |

# PLAINTIFF'S *AGREED* MOTION TO APPROVE COLLECTIVE ACTION SETTLEMENT AGREEMENT

Respectfully submitted,


**USA EMPLOYMENT LAWYERS**
Jordan Richards, Esq.
Pro Hac Vice
Florida Bar No. 108372
1800 SE 10th Ave. Suite 205
Fort Lauderdale, Florida 33316
Ph: (954) 871-0050
E-mail: jordan@jordanrichardspllc.com

**MORGAN & MORGAN, P.A.**
C. Ryan Morgan, Esq.
Pro Hac Vice
Florida Bar No. 0015527
20 N. Orange Ave., 14th Floor
Orlando, Florida 32801
Telephone: (407) 420-1414
Facsimile: (407) 245-3383
Email: cmorgan@forthepeople.com

**MORGAN & MORGAN – NASHVILLE, PLLC**
R. Burke Keaty, II
BPR#027342
801 Broadway, Suite 105
Nashville, TN 37203
(615) 514-4205
E-mail: bkeaty@forthepeople.com

**Attorneys for Plaintiffs**

## Table of Contents

A. Summary ..... 1

B. Factual & Procedural Background ..... 1

C. The Settlement Agreement ..... 3

D. Argument & Authorities ..... 4

1. The Parties have agreed to the terms of the Settlement Agreement. ..... 4
2. The Settlement represents a reasonable compromise of this litigation. ..... 6
   - 2.1. Factor 1: There was no fraud or collusion in reaching the settlement. ..... 6
   - 2.2. Factors 2-4: The case was settled during adversarial litigation. If not resolved, further, extensive litigation would follow. ..... 7
   - 2.3. Factor 5: The participants agree the Settlement is in the best interest of Plaintiff and similarly situated employees. ..... 8
   - 2.4. Factor 6: Because this is an FLSA settlement, there are no absent class members. ..... 10
   - 2.5. Factor 7: The public interest is served by settlement. ..... 11
3. Notice should issue to the proposed collective. ..... 11
4. The Court should allow a service award for the Representative Plaintiff. ..... 12
5. Plaintiff's attorneys' fees and litigation expenses are part of the agreement between the Parties. ..... 13
   - 5.1. The requested fees—33.333333% of the common fund—are squarely within a reasonable percentage range. ..... 14
   - 5.2. Factor 1: Value of the benefit provided. ..... 15
   - 5.3. Factor 2: Value of services on an hourly basis. ..... 16
   - 5.4. Factor 3: Contingent nature of fees. ..... 19
   - 5.5. Factor 4: Society's interest in compensating successful attorneys. ..... 20
   - 5.6. Factor 5: Complexity of the litigation ..... 20
6. Plaintiff's counsel is entitled to recover reasonable costs and expenses. ..... 20

E. Conclusion ..... 21

## TABLE OF AUTHORITIES

### Cases

*Askew v. Inter-Cont'l Hotels Corp.*, No. 5:19-cv-24-BJB, 2022 WL 3161927, --- F.Supp.3d ---- (W.D. Ky. Aug. 8, 2022) .......... 5

*Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822 (N.D. Ohio Mar. 26, 2019) .......... 16, 17, 20

*Blackburn v. Conduent Com. Sols. LLC*, No. 1:19-CV-1229-RP, 2020 WL 9810023 (W.D. Tex. Dec. 22, 2020) .......... 13

*Blanchard v. Bergeron*, 489 U.S. 87, 93, (1989) .......... 20

*Boston & Maine Corn. v. Sheehan. Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) .......... 19

*Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261 (S.D. Ohio 1996) .......... 14

*Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 WL 7889855 (S.D. Ohio Nov. 8, 2018) .......... 16

*Caligiuri v. Symantec Corp.,* 855 F.3d 860 (8th Cir. 2017) .......... 12

*Coach, Inc. v. Goodfellow*, No. 2:10-cv-02410-V, 2012 WL 12868277 (W.D. Tenn. May 22, 2012) .......... 20

*Cosgrove v. Sullivan*, 759 F.Supp. 166 (S.D.N.Y. 1991) .......... 19

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) .......... 9

*Crosby v. Bowarter Inc. Ret. Plan*, 262 F.Supp.2d 804 (W.D. Mich. 2003) .......... 19

*Di Giacomo v. Plains All Am. Pipeline*, No. Civ.A.H–99–4137, Civ.A.H–99–4212, 2001 WL 34633373 (S.D. Fla. Dec. 19, 2001) .......... 19

*Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977 (S.D. Ohio Oct. 3, 2018) .......... 17

*Domingue v. Sun Elec. & Instrumentation, Inc.*, No. CIV.A. 09-682, 2010 WL 1688793 (M.D. La. Apr. 26, 2010) .......... 7

*Evans v. Jeff D.*, 475 U.S. 717 (1986) .......... 5

*Faught v. American Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2012) .......... 14

*Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994) .......... 13, 20

*Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208 (S.D. Ohio Sep. 9, 2016) .......... 17

*Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016) .......... 15

*Glass v. UBS Financial Servs., Inc.*, No. C-06-4068, 2007 WL 221862 (N.D. Cal. 2007) .......... 13

*Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) .......... 18

*Harvey v. Cmty. Health Network, Inc.*, No. 1:22-cv-000659-RLM-MJD, 2023 WL 3240878 (S.D. Ind. May 3, 2023) .......... 9

*Helms v. Morton Buildings, Inc.*, No. 3:18-CV-01281, 2020 WL 13468848 (M.D. Tenn. Apr. 15, 2020) ........ 16

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........ 13

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) ........ 15

*Hiser v. NZone Guidance, LLC*, No. 1:18-CV-1056-RP, 2021 WL 2934896 (W.D. Tex. Jan. 25, 2021) ........ 5

*Howard v. Ellis Moving & Storage, LLC*, No. 3:21-CV-00086, 2022 WL 1005304 (M.D. Tenn. Apr. 4, 2022) ........ 18

*In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002) ........ 19

*In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio 2006) ........ 17

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ........ 21

*In re Cendant Corp. Prides Litig.*, 51 F.Supp.2d 537 (D.N.J. 1999) ........ 19

*In re Charter Communications, Inc., Sec. Litig.*, No. MDL 1506, 4:02–CV–1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ........ 19

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) ........ 12

*In re Flint Water Cases*, 583 F.Supp.3d 911 (E.D. Mich. 2022) ........ 15

*In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891 (E.D. La. 2012) ........ 6

*In re Rite Aid Corp. Secs. Litig.*, 362 F.Supp.2d 587 (E.D. Pa. 2005) ........ 19

*In re RJR Nabisco*, 1992 WL 210138 (S.D.N.Y. Aug.24, 1992) ........ 19

*In re: Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11319391 (S.D. Fla. Aug. 5, 2013) ........ 14

*Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468 (5th Cir. 2011) ........ 6

*Lowther v. AK Steel Corp.*, No. 1:11-CV-877, 2012 WL 6676131 (S.D. Ohio Dec. 21, 2012) ........ 18

*Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559 (D. Colo. Dec. 22, 2010) ........ 12

*McClean v. Health Sys., Inc.*, No. 6:11-CV-03037-DGK, 2015 WL 12513703 (W.D. Mo. Aug. 4, 2015) ........ 12

*Mercer v. Knox Educ. Serv. Ctr.*, No. 2:21-CV-5092, 2022 WL 7482593, at *1 (S.D. Ohio Oct. 13, 2022) ........ 5

*Merkner v. AK Steel*, No. 1:09–CV–423–TSB (S.D. Ohio Jan. 10, 2011) ........ 19

*Osman v. Grube*, No. 3:16-cv-00802-JJH, 2018 WL 2095172 (N.D. Ohio May 4, 2018) ........ 17

Parker v. Anderson, 667 F.2d 1204, 1209 (5th Cir. 1982) ........ 6

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513 (6th Cir. 1993) ........ 13, 14

*Roberts v. Texaco*, Inc., 979 F.Supp. 185, 200 (S.D.N.Y. 1997) ........ 19

*Salinas v. United States Xpress Enters., Inc.*, No. 1:13-cv-00245-TRM-SKL, 2018 WL 1477127 (E.D. Tenn. Mar. 8, 2018) ........ 16

*Sandras v. Expeditors and Prod. Servs. Co.*, C.A. No. 16-0239, 2019 WL 658819 (W.D. La. Feb. 13, 2019) ........ 10

*Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942 (E.D. Tex. 2000) ........ 15

*Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665 (D. Md. 2013) ........ 18

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ........ 14

*Stevens v. PepsiCo Inc.*, No. 7:22-cv-00802-NSR, ECF No. 73 (S.D.N.Y. Dec. 2, 2022) ........ 9

*Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014) .. 21

*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294 (N.D. Cal. 1995) ........ 13

*Venable v. Am. Consulting and Testing Inc.*, No. 6:20-cv-01232, 2022 WL 595738 (W.D. La. Feb. 25, 2022) ........ 9

*Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415 (E.D. Ky. May 12, 2020) ........ 16

*Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669 (S.D. Iowa 2009) ........ 12

*Woorduff v. Kaiser Aluminum Corp.*, No. 3:22-cv-00333, ECF No. 31 (M.D. Tenn. May 4, 2023) ........ 16

**Statutes**

29 U.S.C. § 216 ........ 11, 13

**Other Authorities**

TechRepublic, *Just in time for Christmas, Kronos payroll and HR cloud software goes offline due to ransomware*, https://www.techrepublic.com/article/just-in-time-for-christmas-kronos-payroll-and-hr-cloud-software-goes-offline-due-to-ransomware/ (Dec. 15, 2021) ........ 2

**Treatises**

FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (4th) ........ 17

## A. SUMMARY

Plaintiff, Lauren Boyer ("Plaintiff") requests the Court approve the settlement reached in this Fair Labor Standards Act ("FLSA") case. *See* Settlement Agreement at **Ex. A**. The Settlement Agreement represents the culmination of Plaintiff's and her counsel's investigation, litigation, and negotiation of claims arising from her employment at restaurants owned and operated by the Defendant. It completely resolves her, and the rest of the proposed collective's, claims at issue in this lawsuit. The settlement is fair and reasonable, and it will provide meaningful relief to Plaintiff and the similarly situated Servers and Bartenders of The Steel Coop, LLC, who opt-into the Settlement, in light of the inherent risks of litigation and trial. The Steel Coop, LLC, has defended the claims in this lawsuit and continues to deny any wrongdoing, the violation of any federal wage-and-hour law, and any damages at issue.

For these reasons, settlement of this matter is in the best interest of Plaintiff and the proposed collective members. Plaintiff requests the Court approve the Parties' Settlement Agreement, including notice to the proposed collective, and dismiss the alleged claims with prejudice.

## B. FACTUAL & PROCEDURAL BACKGROUND

Defendant owns and operates 2 restaurants in Tennessee: The Steel Coop in Livingston and Sunset Restaurant in Monroe. *See* ECF No. 1, at ¶¶ 1, 4. Plaintiff, Boyer, began working for Defendant at its restaurants as a Server and Bartender in February 2024. *Id.* Plaintiff continued to work for Defendant until her employment ended on September 9, 2024. *Id.* at ¶ 4. Plaintiff alleges that when she began working for Defendant she was never provided the statutorily required tip credit notice under the Fair Labor Standards Act ("FLSA") that Defendant is required to give employees before it can offset its minimum wage obligations. *Id.*

at ¶¶ 22-39. Notwithstanding Defendant's failure to provide this tip credit notice, the Plaintiff and other similarly situated Servers and Bartenders were nevertheless compensated a sub-minimum wage when they worked as Servers and Bartender. *Id*. Furthermore, during her employment, the Defendant required Plaintiff and other Servers and Bartenders to spend more than 20% of their workweeks performing non-tip producing duties and responsibilities and further required Servers and Bartenders to surrender portions of their tips to management to cover the costs of incorrect food orders. *Id.* at ¶¶ 31-40, 41-46.

On December 23, 2024, Plaintiff brought claims to recover the unpaid wages and liquidated damages owed to her and similarly situated Servers and Bartenders as a result of the Defendant's alleged violations of the FLSA. *See* ECF No. 1. Defendant has denied and continues to deny all material allegations. *See* ECF No. 19. On April 9, 2025, opt-in Plaintiff, Carmen Crockett ("Crockett"), filed her Consent to Sue Under Fair Labor Standards Act. *See* ECF No. 23; ECF No. 23-1. On April 14, 2025, opt-in Plaintiff, Alyssa Mercer ("Mercer"), filed her Consent to Sue Under Fair Labor Standards Act. *See* ECF No. 24; ECF No. 24-1. On April 15, 2025, 2025, opt-in Plaintiff McKenna Shada ("Shada"), filed her Consent to Sue Under Fair Labor Standards. *See* ECF No. 25; ECF No. 25-1.

On April 15, 2025, Plaintiff took the depositions of Defendant's Rule 30(b)(6) Corporate Representative, and Cindy Cooper – the owner of the restaurants. The next day, Plaintiff also took the deposition of Patrick Jones – the General Manager of the restaurants. *See* Declaration of Jordan Richards ("Richards Declaration") attached as **Ex. B**. Based on the testimony uncovered in these depositions, the Parties exchanged relevant class data and information and participated in arms-length negotiations to determine if this action could be

settled on a global basis, in an effort to try to reach resolution of this matter and avoid unnecessary further cost and delay. *Id.*

Immediately following the depositions taken that week, Defendant produced data that included information regarding the Servers and Bartenders employed by Defendant during the relevant time period. The information produced by Defendant shows that Defendant generally compensated Servers a direct wage of $3.00 per hour and attempted to rely on a tip credit in the amount of **$4.25** per hour. The information produced also shows that Defendant generally compensated Bartenders a direct wage of $4.00 per hour and attempted to rely on a tip credit in the amount of **$3.25** per hour. Defendant disclosed that a total of 58,674 hours were worked by Servers at the two restaurants between December 23, 2021, and April 15, 2025. Defendant further disclosed that a total of 21,698 hours were worked by Bartenders at the two restaurants between December 23, 2021, and April 15, 2025. After substantial further work between the Parties and their counsel, the Parties were able to reach a final Settlement Agreement that provides meaningful relief to the Settlement Collective.

### C. The Settlement Agreement

The Settlement will provide a fair, reasonable, and adequate recovery to all Servers and Bartenders who worked for Defendant between December 23, 2021, and April 15, 2025, who choose to opt-into it. Any of these current or former Servers and Bartenders will be notified of, and are eligible to join, the Settlement. The Settlement Agreement has been filed as an attachment to this motion. Under the Settlement Agreement, the Defendant has agreed to create a maximum settlement fund of Four Hundred Seventy-Five Thousand Dollars ($475,000.00). The settlement collective members are divided into 2 groups: Servers and Bartenders.

**Servers**: The Gross Fund covers 58,674 hours worked by Servers during the Collective Period and the portion attributed to Servers represents a recovery of $6.46082699 per hour before deduction of any incentive award, attorney's fees, litigation costs, and settlement administration expenses.

**Bartenders**: The Gross Fund covers 21,698 hours worked by Bartenders during the Collective Period and represents a recovery of $4.42056583 per hour before deduction of any incentive award, attorney's fees, litigation costs, and settlement administration expenses.

The Settlement Agreement does not create any complicated claims process. Once the Settlement is approved, it will be administered by an independent settlement administrator, who will mail and e-mail the proposed notice to all putative collective members. The independent settlement administrator will also send the notice via text message. To opt-into the settlement and obtain their settlement payments, putative collective members need only submit a claims form electronically or via U.S. Mail.

Potential collective members who choose to opt-in will be paid from a net settlement fund (administered by the independent settlement administrator) which will be used to pay Plaintiff, Opt-in Plaintiffs, Plaintiffs' counsel's fees, Plaintiffs' case expenses, and the cost of the settlement administrator.

## D. Argument & Authorities

### 1. The Parties have agreed to the terms of the Settlement Agreement.

Sixth Circuit precedent allows, but does not mandate, judicial review of FLSA settlement agreements. *Mercer v. Knox Educ. Serv. Ctr.*, No. 2:21-CV-5092, 2022 WL 7482593, at *1 (S.D. Ohio Oct. 13, 2022); *see also Askew v. Inter-Cont'l Hotels Corp.*, No. 5:19-cv-24-BJB, 2022 WL 3161927, at *7, --- F.Supp.3d ---- (W.D. Ky. Aug. 8, 2022) ("[T]he Court concludes

that FLSA is not an 'applicable federal statute' under Rule 41(a)(1)(A) that prevents dismissal at the parties' behest."). "To approve a settlement, a court must conclude that it is fair, reasonable, and adequate and that the settlement resolves a bona fide dispute under the FLSA" *Id.* (internal quotation omitted). "The primary focus of the Court's inquiry in deciding whether to approve the settlement of a FLSA collective action is on ensuring that an employer does not take advantage of its employees in settling their claim for wages." *Hiser v. NZone Guidance, LLC*, No. 1:18-CV-1056-RP, 2021 WL 2934896, at *2 (W.D. Tex. Jan. 25, 2021) (quotation omitted).

The Parties have fully executed the proposed settlement agreement for review. The Court has the authority to approve the settlement or decline approval—or even to suggest additional or modified terms that would meet with the Court's approval—but cannot modify the agreement itself. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."); *Cochran v. Zeon D.P., LLC*, 638 F. Supp. 2d 759, 761 (W.D. Ky. 2009) ("While the Court … has broad discretion to approve a settlement, it may not simply impose changes upon or modify the terms of the settlement. Thus, the Court may not fashion its own settlement by highlighting certain provisions as fair or reasonable and striking others it finds unreasonable." (internal citation omitted)); *Bronson v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati*, 604 F. Supp. 68 (S.D. Ohio 1984) ("This Court does **not** have the power to order specific changes or modifications to be made in the agreement." (emphasis in original)); *accord Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (holding, in a class action, "the court cannot modify the bargained-for terms of the settlement agreement"); *In re Oil Spill by Oil Rig "Deepwater*

*Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 944 (E.D. La. 2012) ("[T]he Court is not authorized to insist upon changes that, in its judgment, might lead to a superior settlement."), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), *reh'g en banc denied sub nom. In re Deepwater Horizon—Appeals of the Economic and Property Damage Class Action Settlement*, 756 F.3d 320 (5th Cir. 2014), *cert. denied sub nom. BP Exploration & Prod, Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S.Ct. 754 (2014).

**2. The Settlement represents a reasonable compromise of this litigation.**

There is a strong presumption in favor of finding a settlement fair, particularly where it is the negotiated result of an adversarial proceeding. *Sims v. Hous. Auth. City of El Paso*, No. EP-10-CV-109-PRM, 2012 WL 10862119, at *3 (W.D. Tex. Feb. 29, 2012). The key question is "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *See Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001). Although the class-action provisions of Federal Rule of Civil Procedure 23 do not apply to FLSA collective actions, courts have looked to the six factors used in class actions for evaluating FLSA settlement proposals: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinions of collective counsel and the claims representative; (6) the reaction of absent class members; and (7) the public interest. *See O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 19-CV-02378-SHM-TMP, 2020 WL 7634780 (W.D. Tenn. Dec. 22, 2020) (collecting cases).

**2.1. Factor 1: There was no fraud or collusion in reaching the settlement.**

The Settlement was reached at arms-length after the Parties exchanged significant information and data concerning the hours worked by the Servers and Bartenders and the

wages paid to them. Thus, the settlement is a product of the extended negotiations between the Parties, including arms-length negotiation of counsel. Simply put, there was no fraud or collusion by any participant. *See* Ex. B, ¶14.

### 2.2. Factors 2-4: The case was settled during adversarial litigation. If not resolved, further, extensive litigation would follow.

This case was settled during litigation between the Parties after multiple depositions were taken. "[T]hat this settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Domingue v. Sun Elec. & Instrumentation, Inc.*, No. CIV.A. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010). Indeed, it was resolved only after substantial investigation and work by the Parties and their counsel. The work undertaken by Plaintiff and Plaintiff's counsel included:

- Investigation of Defendant's business structure and management;
- Review of Defendant's employee handbooks;
- Review of legal authority, including court orders and administrative guidance, regarding legal issues before and during the course of the lawsuit;
- Drafting, filing, and serving Plaintiff's original complaint;
- Drafting and sending Plaintiff's disclosures and informal discovery;
- Reviewing Plaintiff's and the opt-in Plaintiffs documents and production;
- Interviewing Plaintiff and potential opt-ins;
- Reviewing Defendant's document production, including payroll and time-keeping documents and data;
- Analyzing and processing data for Plaintiff's payroll, including creating a damage model for the data;
- Preparing for and taking multiple depositions of defense witnesses;
- Preparing Plaintiff for her own deposition; and

- Negotiating and finalizing the Parties' Settlement Agreement and approval documents.

If the case was not settled, there would be extensive work to come, including additional written discovery to and from all Parties and associated discovery disputes, certification of the FLSA collective, depositions of both sides, dispositive motions, and questions regarding applicability of the FLSA, Plaintiffs' damages, Defendant's good faith and willfulness, and decertification.

Under the unique facts presented by this case, the compromised settlement represents a fair compromise of the claims. Defendant planned significant defenses to liquidated damages. In particular, Defendant intended to claim they provided a sufficient notice under the FLSA. The Parties therefore could have litigated these issues for years, including through discovery, trial, and appeal, with no guarantee of success for Plaintiff and the proposed collective. The Settlement avoids this significant risk and provides substantial benefits to the collective members that opt-in—which include all eligible Servers and Bartenders.

In all, the Parties engaged in significant work, recognized and appreciated the risks in proceeding if this case were not settled, and (Plaintiff in particular) recognized that their settlement represented a compromise of the range and certainty of their damages.

### 2.3. Factor 5: The participants agree the Settlement is in the best interest of Plaintiff and similarly situated Servers and Bartenders.

That this Settlement in the best interest of Plaintiffs is an opinion shared by both Plaintiff and her counsel. **Ex. B**, Richards Declaration. Plaintiff's counsel has served as lead or co-lead counsel in numerous wage-and-hour actions with multiple plaintiffs. For example, Plaintiff's counsel, Jordan Richards, and C. Ryan Morgan, have successfully recovered unpaid wages on behalf of many workers, including many large-scale wage-and-hour class/collective

actions. *See* **Ex. B**, Firm Resume; *see, also,* Declaration of C. Ryan Morgan attached as **Ex. C**. Defendant's counsel, has extensive experience in defending employers in all manner of employment law issues, including FLSA claims.

Because Plaintiff is represented by experienced counsel, the Court may rely upon their judgment as to the benefits of settlement in relation to the risks of litigation and trial. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Plaintiff's counsel's experience in, and knowledge of, wage-and-hour cases has been noted by various courts. *Shaw v. Duffy's HR, Inc.,* Broward Cnty. Cir. Ct. Case No. CACE-24-013956 (May 9, 2025) (granting approval of collective action settlement of wage and hour claims for Servers and Bartenders and naming Mr. Richards class counsel); *Peach v. Bluegrass Hospitality Grp. LLC,* M.D. Tenn. Case No. 3:24-cv-792 at ECF No. 37 (Feb. 6, 2025) (granting preliminary approval of class/collective hybrid settlement and naming Mr. Richards and Mr. Morgan co-class counsel); *Janssen v. I.M. Stein, Inc.,* N.D. Ill. Case No. 3:23-cv-50298 at ECF No. 38 (Nov. 20, 2024) (granting approval of class/collective hybrid settlement of wage and hour claims for restaurant workers in Illinois and naming Mr. Richards class counsel); *Mittwol v. Peloton Interactive, Inc.,* W.D. Pa. Case No. 2:23-cv-156-MRH at ECF No. 56 (June 5, 2024) (granting approval of class action settlement of wage and hour claims for Field Specialists and appoint Mr. Richards class counsel); *Prate v. The White Sheep, Inc.,* N.D. Ill. Case No. 1:22-cv-05478 (Nov. 7, 2023) (granting approval of class action settlement of wage and hour claims for restaurant workers and naming Mr. Richards class counsel); *Bird v. Kenkris, Inc.,* Jasper Cnty. Cir. Ct. Case No. 2022LA7 (Sept. 24, 2024) (granting approval of Illinois Biometric Information Privacy Act class action settlement and naming Mr. Richards class counsel); *Griffin v. Timeco Systems, Inc.,* Kankakee Cnty. Cir. Ct. Case No. 2023CH38 (Nov. 14, 2024) (granting final approval of Illinois

Biometric Information Privacy Act class action settlement and naming Mr. Richards co-class counsel); *Harvey v. Cmty. Health Network, Inc.*, No. 1:22-cv-000659-RLM-MJD, 2023 WL 3240878, at *2 (S.D. Ind. May 3, 2023) (approving a wage-and-hour class action settlement and recognizing Morgan & Morgan as "experienced counsel familiar with the applicable facts and law"); *Stevens v. PepsiCo Inc.*, No. 7:22-cv-00802-NSR, ECF No. 73, at *4, 6 (S.D.N.Y. Dec. 2, 2022) (acknowledging wage-and-hour plaintiffs' counsel, including Morgan & Morgan, as "competent and experienced counsel" that achieved a "commendable result, given the complexities of this Litigation"). *See* **Ex. B; Ex. C**.

Plaintiffs' counsel agrees the Settlement Agreement is a fair and reasonable compromise of a bona fide dispute regarding the claims alleged by Plaintiff in light of the procedural posture of the case, the litigation risks, and the litigation costs to Plaintiffs. Ex. B, Richards Declaration. Because the settlement is a fair and reasonable compromise given the considerations outlined above, the Court should approve the Settlement.

**2.4. Factor 6: Because this is an FLSA settlement, there are no absent class members.**

The settlement in this case resolves the claims at issue through only the FLSA's opt-in collective action mechanism, rather than Rule 23. Each putative collective member would receive a notice advising them of the settlement so they can decide for themselves whether to accept the settlement offered by Defendant. The proposed Notice is attached to the Settlement Agreement at **Ex. B**. Thus, there are no "absent" class members because all plaintiffs must affirmatively opt-into the case, whether before or in conjunction with the settlement. *Lawson v. Procare CRS, Inc.*, No. 18-cv-00248-TCK-JFJ, 2019 WL 112781, at *3 (N.D. Okla. Jan. 4, 2019) ("Unlike settlements of class actions, cases involving infants or incompetent persons, or settlements of non-bona fide disputes, FLSA claims are opt-in, meaning that the named

Plaintiffs are represented by counsel and are actively engaged with the litigation."). And because there is no preliminary approval stage, with notice to "absent" class members, there are not even any objections or exclusions the Court could consider, as in a proposed Rule 23 settlement. For this reason, Factor 6 is not triggered here.

**2.5. Factor 7: The public interest is served by settlement.**

The public interest is generally served by settlement of disputed claims. *O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 19-CV-02378-SHM-TMP, 2020 WL 7634780, at *14 (W.D. Tenn. Dec. 22, 2020). This is particularly true in claims, where there is a separate public interest in enforcing compliance with wage-and-hour laws. *See id.* Of course, even case carries inherent risk to litigant, and this case is no different. *See id.* And even where liability appears clear, settlement is still favored because it would conserve the parties and judicial resources. *Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *14 (E.D. Ky. May 12, 2020). This factor therefore also weighs in favor of settlement.

**3. Notice should issue to the proposed collective.**

As part of the Settlement Agreement, the Parties consent for notice of this case and the Settlement to issue to the following collective, pursuant to the FLSA, 29 U.S.C. § 216(b):

> All Servers and Bartenders who worked for Defendant at The Steel Coop and/or Sunset Restaurant between December 23, 2021, and April 15, 2025.

The proposed notice provides information in clear and concise terms on the lawsuit itself, the Settlement collective, the terms and conditions of the Settlement, the relief the Settlement will provide collective members that opt-in, and the procedure for opting into the Settlement.

4. **The Court should allow a service award for the Representative Plaintiff.**

The terms of the Settlement allow the Representative Plaintiff, Lauren Boyer, to receive a reasonable service award as set forth in the Settlement Agreement, to be paid from the gross settlement amount for her role in initiating the investigation and litigation of this matter, serving as a claims representative, responding to counsel's questions, providing documents, reviewing discovery responses and data, participating in settlement discussions, reviewing the Settlement, and otherwise assisting counsel. The $10,000.00 service award also provides consideration for a general release of all claims.

Courts routinely approve service awards to compensate representative plaintiffs for the services they provided and the risks they incurred during the course of the class or collective action litigation. *See*, *e.g.*, *Caligiuri v. Symantec Corp.,* 855 F.3d 860, 868 (8th Cir. 2017) (approving $10,000 service award to each named plaintiff); *Koszyk v. Country Fin.*, No. 16 Civ. 3571, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action); *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009) (same); *McClean v. Health Sys., Inc.*, No. 6:11-CV-03037-DGK, 2015 WL 12513703, at *1 (W.D. Mo. Aug. 4, 2015) (approving $5,000 service award to each named plaintiff); *Castillo v. Morales, Inc.*, No. 2:12-cv-00650, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (approving $8,000 service award to named plaintiff representative in wage-and-hour case). Service awards are intended to reflect the substantial work performed and risk undertaken by a lead plaintiff, and can often be substantial. *See, e.g., Sanders v. MPRI, Inc.,* No. 5:08-cv-00345-R, ECF No. 180 (W.D. Okla. Oct. 19, 2009) (approving service awards to helpful plaintiffs of up to $14,300); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *6 (D. Colo. Dec.

22, 2010) (approving service award of $10,000 as being "well within the range of reasonable incentive awards"); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (approving incentive awards ranging from $35,000 to $50,000); *Glass v. UBS Financial Servs., Inc.*, No. C-06-4068, 2007 WL 221862, at *16 (N.D. Cal. 2007), *aff'd*, 331 Fed.Appx. 452 (9th Cir. 2009) (approving $25,000 service awards to each named plaintiff); *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 service award to lead plaintiff). "Given [Estevez's] active participation," a service award is reasonable. *Blackburn v. Conduent Com. Sols. LLC*, No. 1:19-CV-1229-RP, 2020 WL 9810023, at *3 (W.D. Tex. Dec. 22, 2020).

**5. Plaintiff's attorneys' fees and litigation expenses are part of the agreement between the Parties.**

A portion of the Settlement is allocated to the payment of Plaintiff's attorneys' fees and case expenses. It is entirely appropriate for the issue of attorneys' fees to be settled by the Parties themselves. *See*, *e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee.").

The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b). The provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

The Sixth Circuit "require[s] only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Rawlings v. Prudential-Bache*

*Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). When awarding attorneys' fees from a common fund, "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results obtained." *Id.* The court may do so by utilizing the percentage of the fund method, as Plaintiff proposes here, which "more accurately reflects the results achieved." *Id.*

In reviewing the award, the Court may consider the following factors: (1) the value of the benefit rendered to the plaintiff class/collective (that is, the results achieved); (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1280 (S.D. Ohio 1996), *on reconsideration in part*, 927 F. Supp. 1036 (S.D. Ohio 1996), *aff'd sub nom. Arthur Ray Bowling v. Pfizer, Inc.*, 103 F.3d 128 (6th Cir. 1996), *and aff'd*, 102 F.3d 777 (6th Cir. 1996).

### 5.1. The requested fees—33.333333% of the common fund—are squarely within a reasonable percentage range.

Boyer requests the Court approve the attorneys' fees agreed upon under the settlement agreement as a percentage of the fund, which amounts to approximately 33.333333% of the gross monetary benefit obtained for the putative collective.

The common fund consists of the total potential benefit obtained for the collective is $475,000.00. *In re Flint Water Cases*, 583 F.Supp.3d 911, 947 (E.D. Mich. 2022) ("The Sixth Circuit instructs that the value of the benefit to the class is based 'on the total relief class counsel makes available to all the class members.'" (quoting *Gascho v. Glob. Fitness Holdings,*

*LLC*, 822 F.3d 269, 278 (6th Cir. 2016) (emphasis removed)), *dismissed*, No. 22-1187, 2022 WL 18960956 (6th Cir. Sept. 14, 2022).

**5.2. Factor 1: Value of the benefit provided.**

When evaluating a claim for fees, the "most critical" factor is a party's success in the litigation. *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). In this respect, the settlement represents nothing short of an excellent recovery for Plaintiffs and the putative collective.

One court, undertaking an analysis of reasonableness of requested attorneys' fees in a class action, considered the comparative data regarding Rule 23 class settlements summarized by the National Economic Research Associates (NERA). *Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942 (E.D. Tex. 2000). The NERA Study relied upon by *Shaw* showed that the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement in this case is *significantly* higher.

Under the settlement, putative collective members who were underpaid will receive direct cash payments representing a substantial recovery on their alleged damages. Considering the risks of continued litigation, the settlement provides Plaintiffs with 100% of their unpaid wages, and a significant amount of liquidated damages related to the alleged violations in this case.

Under Plaintiffs' theory of the case, Plaintiffs have prevailed in securing compensation for their claims. They acquired a settlement that provides recovery for each Plaintiff and putative collective member. Meanwhile, under Defendant's theory, the putative collective members would be owed nothing.

### 5.3. Factor 2: Value of services on an hourly basis.

Plaintiff's attorneys' fees in this case are well within precedent in the Sixth Circuit, and, in fact, are on the low end of that range. In common fund cases such as this, including FLSA cases, district courts have approved fees ranging up to 40% of the collective's gross recovery. *Woorduff v. Kaiser Aluminum Corp.*, No. 3:22-cv-00333, ECF No. 31 (M.D. Tenn. May 4, 2023) (Trauger, J.) (awarding 40%); *Love v. Gannett Co. Inc.*, No. 3:19-CV-296-BJB-RSE, 2021 WL 4352800, at *7 (W.D. Ky. Sept. 24, 2021) (same); *Helms v. Morton Buildings, Inc.*, No. 3:18-CV-01281, 2020 WL 13468848, at *2 (M.D. Tenn. Apr. 15, 2020) (same); *Salinas v. United States Xpress Enters., Inc.*, No. 1:13-cv-00245-TRM-SKL, 2018 WL 1477127, at *1, 7-9 (E.D. Tenn. Mar. 8, 2018) (same); *Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 WL 7889855, at *2 (S.D. Ohio Nov. 8, 2018) (same); *Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *16 (E.D. Ky. May 12, 2020) (awarding 1/3); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *4-5 (N.D. Ohio Mar. 26, 2019) (same); *Osman v. Grube*, No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018) ("One-third of the common fund is a reasonable attorneys' fee award and has been approved in similar FLSA collective actions in this judicial district." (internal quotation omitted)).

A contingency award may be examined by performing a lodestar cross-check of the fee award. *Barnes*, 2019 WL 1614822, at *6. However, the cross-check is "not required." *Id.*; *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208, at *7 (S.D. Ohio Sep. 9, 2016) ("Performing a cross-check of the attorney-fee request using Class Counsel's lodestar is optional."); *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977, at *6 (S.D.

Ohio Oct. 3, 2018) (specifying a lodestar cross-check of percentage of the fund fee award is "unnecessary").

The relatively early settlement of this matter should not be held against Plaintiffs' counsel. Plaintiffs' counsel efficiently resolved this case by working with Plaintiffs, and defense counsel, including by exchanging complex damage models and legal authorities, rather than prolonging the litigation and increasing the potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (4th) § 14.121.

Nonetheless, Plaintiffs' total lodestar fees are within a reasonable multiplier of the total fees sought. **Ex. B**, Richards Declaration. Plaintiffs' counsel estimates that, to date, a total of at least 150 hours have been devoted by the attorneys working on this case. *Id.* At a $400 per hour rate, which this Court recognized last year as being "commonly awarded in recent FLSA cases in this district," this equates to a total lodestar of $60,000.00. *Howard v. Ellis Moving & Storage, LLC*, No. 3:21-CV-00086, 2022 WL 1005304, at *5 (M.D. Tenn. Apr. 4, 2022) (Trauger, J.). Critically, even after approval, Plaintiffs' counsel's time in this matter will continue to increase. Plaintiffs' counsel will spend additional time fulfilling Plaintiffs' obligations under the settlement agreement, administering the settlement, and responding to Plaintiffs' and putative collective members' inquiries. These efforts may easily match or surpass the time Plaintiffs' counsel has already devoted to this matter. A reasonable estimate of total hours of a minimum of 200 hours after administration is completed is expected, and Plaintiffs' counsel's lodestar would therefore be at $80,000.00. *E.g.*, *Hall v. ProSource Techs.*,

*LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *14 (E.D.N.Y. Apr. 11, 2016) ("In determining a reasonable attorneys' fee award, courts are mindful of the fact that the lodestar multiplier will diminish when counsel is required to perform additional work in administering a finalized settlement.") (collecting cases). In all, Plaintiff's counsel's current lodestar has only a 2.0 multiplier, which is already well within the range of reasonableness and will continue to decrease. *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."); *Lowther v. AK Steel Corp.*, No. 1:11-CV-877, 2012 WL 6676131, at *2 (S.D. Ohio Dec. 21, 2012) (finding lodestar multiplier of 3.06 "very acceptable under the facts and circumstances of this case"); *In re Rite Aid Corp. Secs. Litig.*, 362 F.Supp.2d 587, 589 (E.D. Pa. 2005) (6.96 multiplier); *In re RJR Nabisco*, 1992 WL 210138, at *5-6 (S.D.N.Y. Aug.24, 1992) (6 multiplier); *Cosgrove v. Sullivan*, 759 F.Supp. 166, 167 n.1 (S.D.N.Y. 1991) (8.74 multiplier); *Boston & Maine Corn. v. Sheehan. Phinney, Bass & Green, P.A.*, 778 F.2d 890, 894 (1st Cir. 1985) (6 multiplier); *Roberts v. Texaco*, Inc., 979 F.Supp. 185, 200 (S.D.N.Y. 1997) (5.5 multiplier); *In re Charter Communications, Inc., Sec. Litig.*, No. MDL 1506, 4:02–CV–1186 CAS, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (5.61 multiplier); *In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134-35 (D.N.J. 2002) (4.3 multiplier ); *In re Cendant Corp. Prides Litig.*, 51 F.Supp.2d 537 (D.N.J. 1999) (5.28 multiplier ), *vacated and remanded*, 243 F.3d 722 (3d Cir.2001), *on remand*, No. 98–2819 (D.N.J. June 11, 2002); *Di Giacomo v. Plains All Am. Pipeline*, No. Civ.A.H–99–4137, Civ.A.H–99–4212, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) (5.3 multiplier); *Merkner v. AK Steel*, No. 1:09–CV–423–TSB (S.D. Ohio Jan. 10, 2011) (5.3 multiplier).

### 5.4. Factor 3: Contingent nature of fees.

Plaintiffs' counsel undertook this representation on a purely contingent basis. Plaintiffs' counsel thus took on the risk that accompanies contingent-fee representation that the investment of substantial attorney time and resources would be lost, including the prospect of dispositive motions or unfavorable outcomes late in discovery, or even at trial or on appeal. Plaintiff's counsel should be compensated for this risk. *See*, *e.g.*, *Crosby v. Bowarter Inc. Ret. Plan*, 262 F.Supp.2d 804, 814 (W.D. Mich. 2003) (explaining a contingency justifies a higher fee). "There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011).

Had this case not settled, Plaintiffs' counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, The Steel Coop could have succeeded. Therefore, Plaintiffs' counsel was at great risk for non-payment for all work performed.

Moreover, Plaintiff's agreement with counsel allowed Plaintiff's counsel to seek a 33.333333% contingency in the amount of all monetary value obtained by way of the claims. Ex. B, Richards Declaration, at ¶ 40. "The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) (citations omitted); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *5 n.1 (N.D. Ohio Mar. 26, 2019) (same).

This factor thus favors approval of the requested fees.

### 5.5. Factor 4: Society's interest in compensating successful attorneys.

There is no doubt that "society certainly has an interest in incentivizing attorneys to assist in combatting illegal nonpayment of wages." *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994). Plaintiff's counsel took on this matter to represent Boyer and similarly situated Servers and Bartenders in their wage claims against Defendant. This factor supports awarding the requested fees to encourage qualified attorneys to represent employees in claims for unpaid wages.

### 5.6. Factor 5: Complexity of the litigation

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (internal citation omitted). Had the case not settled, the parties faced complex motion practice, both over the merits, as well as on procedural matters, such as collective treatment.

## 6. Plaintiff's counsel is entitled to recover reasonable costs and expenses.

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003).

Plaintiffs' counsel seeks reimbursement of the following litigation expenses, which were reasonable and necessary for prosecuting this case.

| Cost | Amount |
|---|---|
| Court Filing Fees | $ 405.00 |
| Service | $ 304.11 |

| Cost | Amount |
|---|---|
| Court Reporter for Deposition of Corporate Representative & Cindy Cooper | $ 870.00 |
| Court Reporter for Deposition of Patrick Jones | $ 585.00 |
| Postage | $ 13.00 |
| Filing Fees for Pro Hac Vice Appearances | $351.80 |
| | |
| **TOTAL** | **$ 2,528.91** |

## E. CONCLUSION

For these reasons, the Court should approve the Settlement Agreement reached by the Parties.

Respectfully submitted,

*/s/ Jordan Richards*
By: ______________________________

**Jordan Richards**
Pro Hac Vice
Florida Bar No. 108372
**USA EMPLOYMENT LAWYERS**
1800 SE 10th Ave. Suite 205
Fort Lauderdale, Florida 33316
Ph: (954) 871-0050
E-mail: jordan@jordanrichardspllc.com

**C. Ryan Morgan, Esq.**
Florida Bar No.: 0015527
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., 14th Floor
Orlando, Florida 32801
Telephone: (407) 420-1414
Facsimile: (407) 245-3383
Email: cmorgan@forthepeople.com

**R. Burke Keaty, II**, BPR#027342
**MORGAN & MORGAN – NASHVILLE, PLLC**
801 Broadway, Suite 105
Nashville, TN 37203
(615) 514-4205
E-mail: bkeaty@forthepeople.com

**Attorneys for Plaintiffs**

## CERTIFICATE OF CONFERENCE

Prior to filing this motion, I conferred with Defendant's counsel, who confirmed Defendant agrees to the relief sought herein.

***/s/ Jordan Richards***

Jordan Richards

## CERTIFICATE OF SERVICE

On June 23, 2025, I served a copy of this document and any attachments on the following parties via the Court's CM/ECF system:

Howard Jackson — hjackson@fordharrison.com
Melany Hernandez — mhernandez@fordharrison.com
FORD HARRISON

**Attorneys for The Steel Coop LLC**

Jordan Richards — jordan@jordanrichardspllc.com
USA EMPLOYMENT LAWYERS

C. Ryan Morgan — cmorgan@forthepeople.com
R. Burke Keaty, II — bkeaty@forthepeople.com
MORGAN & MORGAN, P.A.

**Attorneys for Plaintiffs**

***/s/ Jordan Richards***

Jordan Richards